Colonel Winford E. Phillips, Director Arkansas State Police 1 State Police Plaza Drive Little Rock, Arkansas 72209-4822
Dear Colonel Phillips:
I am writing in response to your request for my opinion on the following question:
 Pursuant to provisions of A.C.A. 12-12-507, do investigators with the Crimes Against Children Division ("CACD") have the legal authority to investigate and make findings concerning the validity of reported alleged violations, and to place individuals on the Arkansas Central Registry, for incidents which occur outside the State of Arkansas?
RESPONSE
In my opinion, the answer to this question is a qualified "yes." If the alleged offender is a resident of Arkansas and the report of child maltreatment in the state or country in which the act occurred would also be child maltreatment in Arkansas at the time the incident occurred, then the appropriate Arkansas investigating agency shall investigate and, if the allegation is determined to be true, place the offender's name in the central registry.
This conclusion is dictated, in my opinion, by the following provision:
 If the child abuse hotline receives a report and the alleged offender is a resident of the State of Arkansas and the report of child maltreatment in the state or country in which the act occurred would also be child maltreatment in Arkansas at the time the incident *Page 2 
occurred, the child abuse hotline shall refer the report to the appropriate investigating agency within the state so that the Arkansas investigative agency can investigate, alone or in concert with, the investigative agency of any other state or country that may be involved.
 The Arkansas investigating agency shall make an investigative determination and shall provide notice to the alleged offender that, if the allegation is determined to be true, the offender's name will be placed in the central registry.
A.C.A. § 12-12-507(g)(4)(A) and (B) (Supp. 2007).
In my opinion, subsection 12-12-507(g)(4) is directly germane to the question you have posed. This subsection addresses the appropriate course of action to be followed when a resident of Arkansas commits an alleged offense out of state. The subsection is initially premised upon the child abuse hotline's receipt of a report. In this regard, subsection 12-12-507(g)(1) provides:
 The child abuse hotline shall accept a report if the child or the child's family is present in Arkansas or the incident occurred in Arkansas.
A.C.A. § 12-12-507(g)(1) (Supp. 2007).
The first of the alternative scenarios under which the hotline must accept a report — "the child or the child's family is present in Arkansas" — clearly is irrespective of the location of the alleged offense. That is, the former of the two alternatives indicates that irrespective of the location of the alleged offense, the hotline is obliged to "accept" a report so long as the child or the child's family is present in Arkansas at the time the report is tendered. I note, however, that the subsection makes no reference to what actions the child abuse hotline should take once it has accepted the report under either of the recited circumstances. This requires reference to the remainder of A.C.A. § 12-12-507(g), which in relevant part provides:
 (2) If the child or the child's family resides in another state, the child abuse hotline shall screen out the report, transfer the report to the child abuse hotline of the state where the child or the child's family resides or the incident occurred, and, if requested by the other state's *Page 3 
investigating agency, send a copy to the appropriate investigating agency in Arkansas to initiate interviews.
 (3) If the incident occurred in Arkansas and the victim, offender, or parents no longer reside in Arkansas, the child abuse hotline shall accept the report and the Arkansas investigating agency shall contact the other state and request assistance in completing the investigation, including an interview with the out-of-state subject of the report.
 (4)(A) If the child abuse hotline receives a report and the alleged offender is a resident of the State of Arkansas and the report of child maltreatment in the state or country in which the act occurred would also be child maltreatment in Arkansas at the time the incident occurred, the child abuse hotline shall refer the report to the appropriate investigating agency within the state so that the Arkansas investigative agency can investigate, alone or in concert with, the investigative agency of any other state or country that may be involved.
 (B) The Arkansas investigating agency shall make an investigative determination and shall provide notice to the alleged offender that, if the allegation is determined to be true, the offender's name will be placed in the central registry.
 (C) The other state may also conduct an investigation in this state that results in the offender's being named in a true report in that state and placed in the central registry of that state.
As stated above, I believe subsection 12-12-507(g)(4) is directly germane to your question regarding incidents that occur outside the State of Arkansas. In accordance with this provision, any reports in which the person alleged to have abused the child is a resident of the State of Arkansas and "the report of child maltreatment in the state or country in which the act occurred would also be child maltreatment in Arkansas" shall be referred to the appropriate state authorities so as to allow an investigative agency in Arkansas to investigate the matter, either alone or in conjunction with the agency investigating the abuse in another state or country. Id. at (A). I realize in this regard that subsection 12-12-507(g)(2) contemplates a report being "screened out" and transferred to the state where the incident occurred if "the child or the child's family resides in another state," but in my opinion this provision is subject to the more specific requirement under *Page 4 
subsection 12-12-507(g)(2) in the event the alleged offender is a resident of Arkansas. This conclusion is further buttressed by the legislative history of A.C.A. § 12-12-507(g), which reveals that subsection (g)(4) was a later addition to the statute. Compare
Acts 2001, No. 1210, § 5 with Acts 2003, No. 758, § 9. Although amendments by implication are not favored in construing statutes, see Cummings v.Washington County Election Com'n, 291 Ark. 354, 724 S.W.2d 486 (1987), the provisions of an act adopted later in time will ordinarily be deemed to repeal the conflicting provisions of an earlier act. Daniels v. Cityof Fort Smith, 268 Ark. 157, 594 S.W.2d 238 (1980).
As a final note, I should point out that according to my understanding, this interpretation of the statute is consistent with that of the Arkansas Department of Human Services, which is charged with implementing the Arkansas Child Maltreatment Act. See A.C.A. § 12-12-502 (Repl. 2003). The Arkansas Supreme Court has stated that agency interpretations of statutes are afforded great deference, even though they are not binding. Arkansas State Medical Board v. Bolding,324 Ark. 238, 920 S.W.2d 825 (1996). The interpretation given a statute by the agency charged with its execution is highly persuasive and while not conclusive, will be upheld unless clearly wrong. See Macsteel,Parnell Consultants v. Ark. Ok. Gas Corp., 363 Ark. 22.210 S.W.3d 878 (2005);McClane Co., Inc. v. Davis, 353 Ark. 539, 110 S.W.3d 251 (2003);Arkansas State Medical Board v. Bolding, supra.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
 DUSTIN McDANIEL, Attorney General *Page 1